1

2

3

4

5

6

7

```
            FILED
  CLERK, U.S. DISTRICT COURT

      9/8/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY
```

8              UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10               January 2020 Grand Jury

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, | CR   2:20cr405 FMO |
| 12          Plaintiff, | I N D I C T M E N T |
| 13          v. | |
| 14 JORGE HUGO ZAVALA-LOPEZ, | [18 U.S.C. § 1956(h): Conspiracy |
| ABEL BUSTAMANTE-DURAN, | to Commit Money Laundering; 18 |
| 15   aka "Prieto," | U.S.C. § 1956(a)(1)(B)(i): |
| HONG ZENG, | Laundering of Monetary |
| 16   aka "Alondra China," | Instruments; 18 U.S.C. § 2(a): |
| MARCO ANTONIO MENDEZ-GUZMAN, | Aiding and Abetting; 18 U.S.C. |
| 17   aka "Acelerin," | § 982(a)(1): Criminal Forfeiture] |
| RAFAEL OMAR CRUZ-VALEDON, | |
| 18   aka "Parce," | |
| FNU LNU, aka "Alvarez," | |
| 19 ERICK GIOVANNY GARCIA, | |
|   aka "Juanito," | |
| 20 DIANA QUIROZ GARCIA, | |
| JUAN CARLOS ARREOLA, and | |
| 21 RAMON ANTONIO LOPEZ-LLAMAS, | |
| 22          Defendants. | |
| 23 | |

24      The Grand Jury charges:

25

26

27

28

COUNT ONE

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown but no later than August 17, 2015, and continuing until at least on or about September 25, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants: JORGE HUGO ZAVALA-LOPEZ ("ZAVALA"); ABEL BUSTAMANTE-DURAN, also known as ("aka") "Prieto," ("BUSTAMANTE"); HONG ZENG, aka "Alondra China"; MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," ("MENDEZ"); RAFAEL OMAR CRUZ-VALEDON, aka "Parce," ("CRUZ"); FIRST NAME UNKNOWN ("FNU"), LAST NAME UNKNOWN ("LNU"), aka "Alvarez," ("ALVAREZ"); ERICK GIOVANNY GARCIA, aka "Juanito," ("E. GARCIA"); DIANA QUIROZ GARCIA ("D. GARCIA"), JUAN CARLOS ARREOLA, RAMON ANTONIO LOPEZ-LLAMAS ("LOPEZ"), conspired and agreed with each other and others known and unknown to the Grand Jury to commit offenses against the United States, namely:

1.   Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances:

a.   Conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.    Engaged in and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957;

2.    Transporting, transmitting, and transferring monetary instruments and funds from a place inside the United States to a place outside of the United States, namely, China and Mexico, knowing that the monetary instrument and funds represented the proceeds of some form of unlawful activity, the unlawful distribution of controlled substances, with the intent to conceal and disguise the nature, the location, the source, the ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

B.    <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants ZAVALA and BUSTAMANTE would identify bulk cash drug proceeds in United States currency generated from the sale of drugs in the United States to be repatriated back to the sellers of the drugs in Mexico, China, and elsewhere, and would offer commission to others who would be able to transmit such proceeds ("money-laundering contracts").

2.    Defendants ZAVALA and BUSTAMANTE would direct those who accepted money-laundering contracts to retrieve United States currency in the United States and deliver the equivalent in funds (less a commission) in bulk cash United States currency to couriers in the Los Angeles area and/or by transferring the funds via wire transfer to bank accounts.

3

3.    Defendants ZAVALA and BUSTAMANTE would provide those who accepted money-laundering contracts with telephone numbers, code phrases, and/or serial numbers from dollar bills to be used to contact the couriers and confirm identities.

4.    Defendants CRUZ, ALVAREZ, D. GARCIA, and others known and unknown, would act as couriers and/or intermediaries to deliver bulk cash drug proceeds on behalf of defendant ZAVALA and/or defendant BUSTAMANTE in connection with money-laundering contracts.

5.    Defendants MENDEZ, E. GARCIA, ARREOLA, LOPEZ, and others known and unknown, would act as couriers and/or intermediaries to accept delivery of bulk cash drug proceeds in the Los Angeles area on behalf of defendant ZAVALA and/or defendant BUSTAMANTE in connection with money-laundering contracts.

6.    Defendant ZENG would use bank accounts she controlled in the name of Company A, namely, Company A Account 1 and Company A Account 2 (collectively, the "Company A Accounts"), to accept deposits consisting of drug proceeds in connection with money-laundering contracts offered by defendant ZAVALA and/or defendant BUSTAMANTE, for the purpose of concealing the nature, source, ownership, and control of the proceeds.

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants ZAVALA, BUSTAMANTE, ZENG, MENDEZ, CRUZ, ALVAREZ, E. GARCIA, D. GARCIA, ARREOLA, LOPEZ, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

4

October 2015 Dallas Money Contract

1.     On or about October 14, 2015, using coded language in a telephone conversation, defendant BUSTAMANTE offered a money-laundering contract to collect approximately $70,000 in drug proceeds in Dallas, Texas to an individual defendant BUSTAMANTE believed to be a money-launderer but who was, in fact, a confidential informant working for the Drug Enforcement Administration ("DEA") ("Broker A").

2.     On or about October 14, 2015, using coded language in a telephone conversation, defendant BUSTAMANTE sent Broker A the telephone number of a Dallas-based money courier who would be delivering the drug proceeds and a code phrase.

3.     On October 15, 2015, an unindicted co-conspirator, on behalf of defendant BUSTAMANTE, delivered $70,000 concealed inside a clock-radio box in Dallas to an undercover law enforcement agent posing as Broker A's associate.

4.     On or about October 19, 2015, using coded language in a telephone conversation, defendant BUSTAMANTE provided Broker A the telephone number of defendant MENDEZ as the Los Angeles-based courier to whom Broker A should deliver the drug proceeds.

5.     On October 20, 2015, using coded language in a telephone conversation, defendant MENDEZ instructed an undercover law enforcement agent, posing as Broker A's associate, to deliver the funds to defendant MENDEZ inside a package that was not see-through.

6.     On October 20, 2015, defendant MENDEZ accepted $68,600 in Los Angeles from an undercover law enforcement agent posing as Broker A's associate.

October 2015 Detroit Money Contract

7.   On or about October 27, 2015, using coded language in a telephone conversation, defendant BUSTAMANTE offered Broker A a money-laundering contract to collect approximately $400,000 in drug proceeds in Detroit, Michigan, and provided to Broker A the telephone number of the money courier who would be delivering the funds.

8.   On October 29, 2015, an unindicted co-conspirator, at the behest of and on behalf of defendant BUSTAMANTE, delivered $398,970 concealed inside a nylon sleeve and a shoebox to a confidential informant working for law enforcement and posing as Broker A's associate.

9.   On or about November 1, 2015, using coded language in a telephone conversation, defendant BUSTAMANTE provided Broker A the telephone number of defendant MENDEZ as the Los Angeles-based courier to whom Broker A should deliver the drug proceeds.

10.   On November 2, 2015, using coded language in a telephone conversation, defendant MENDEZ instructed an undercover law enforcement agent posing as Broker A's associate to deliver the funds to defendant MENDEZ inside something dark or inside a box.

11.   On November 2, 2015, defendant MENDEZ accepted $390,990 representing drug proceeds inside a FedEx package in Los Angeles from an undercover law enforcement agent posing as Broker A's associate.

12.   On or about November 2, 2015, defendant MENDEZ drove from Los Angeles to the Phoenix, Arizona area with the FedEx package he had accepted earlier that day; the next day, a $300,000 cash deposit was made into a Scottsdale, Arizona bank account held by Co-conspirator 1.

13.   On November 27, 2015, Co-conspirator 1 caused $200,000 in drug proceeds to be sent via wire transfer to Company A Account 1, which was controlled by defendant ZENG.

14.   On November 30, 2015, Co-conspirator 1 caused $153,803.06 in drug proceeds to be sent via wire transfer to Company A Account 1, which was controlled by defendant ZENG.

March 2016 Boston Money Contract

15.   On or about March 11, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE offered Broker A a money-laundering contract to collect approximately $350,000 in drug proceeds in Boston, Massachusetts, and provided to Broker A the telephone number of a Boston-based money courier who would be delivering the drug proceeds.

16.   On or about March 13, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE asked Broker A to open a WhatsApp account so that defendant BUSTAMANTE could send Broker A account information for the bank accounts to which Broker A should wire transfer the drug proceeds to be picked up in Boston.   In response, Broker A provided to defendant BUSTAMANTE a WhatsApp account represented to belong to the individual in charge of wiring funds on behalf of Broker A, but that was, in fact, being used by an undercover law enforcement agent posing as Broker A's associate (the "UC WhatsApp Account").

17.   On March 14, 2016, defendant ALVAREZ, at the behest of and on behalf of defendant BUSTAMANTE, delivered $330,020 in drug proceeds, which were vacuum-sealed inside plastic bags, in Boston to an undercover law enforcement agent posing as Broker A's associate.

18.   On March 15, 2016, in multiple WhatsApp messages, defendant BUSTAMANTE sent to the UC WhatsApp Account the account information for the Company A Accounts, which were controlled by defendant ZENG.

19.   On March 16, 2016, in a WhatsApp message, defendant BUSTAMANTE sent to the UC WhatsApp Account instructions to wire transfer the drug proceeds delivered in Boston evenly to the two Company A Accounts, which were controlled by defendant ZENG.

20.   On March 16, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE requested from Broker A confirmation that funds had been transferred to the two Company A Accounts so that individuals in Hong Kong would provide defendant BUSTAMANTE with chemical precursors used to manufacture drugs.

21.   On March 18, 2016, defendant ZENG accepted wire transfers in the amounts of $158,409.60 and $158,409.60 to the two Company A Accounts from an undercover bank account controlled by the DEA.

<u>March 2016 Chicago Money Contract</u>

22.   On or about March 21, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE offered Broker A a money-laundering contract to collect approximately $100,000 in drug proceeds in Chicago, Illinois and provided to Broker A the telephone number of a Chicago-based money courier who would be delivering the drug proceeds.

23.   On March 23, 2016, an unindicted co-conspirator, at the behest of and on behalf of defendant BUSTAMANTE, delivered $99,925 in drug proceeds in Chicago to an undercover law enforcement agent posing as Broker A's associate.

24.   On March 28, 2016, using coded language in a text message, defendant BUSTAMANTE provided to an undercover law enforcement agent

8

working for the DEA, who defendant BUSTAMANTE believed to be the leader of Broker A's money-laundering organization ("UC-1"), the telephone number of defendant MENDEZ as the Los Angeles-based courier to whom UC-1 should have the drug proceeds delivered.

25. On March 28, 2016, defendant MENDEZ accepted $97,925 in drug proceeds in Los Angeles from an undercover law enforcement agent, who was posing as UC-1's associate.

<u>March-April 2016 Boston Money Contract</u>

26. On March 21, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE offered UC-1 a money-laundering contract to collect approximately $280,000 in drug proceeds in Boston, Massachusetts, and told UC-1 that the funds needed to be wire transferred to Hong Kong.

27. On March 23, 2016, using coded language in a WhatsApp message, defendant BUSTAMANTE provided to UC-1 the telephone number of defendant CRUZ as the money courier who would be delivering the drug proceeds.

28. On March 24 and 25, 2016, using coded language in telephone conversations, defendant CRUZ told UC-1 that defendant CRUZ: (a) worked for Mexican drug traffickers who sent him cocaine to deliver in Boston; (b) sold between 15 and 20 kilograms of cocaine per week; and (c) sent approximately $5 million in drug proceeds to Mexico each month from drug sales in Boston. Defendant CRUZ further asked UC-1 if UC-1 could supply defendant CRUZ with cocaine to sell.

29. On March 31, 2016, defendants CRUZ and ALVAREZ met in Boston with UC-1 and an undercover DEA agent posing as UC-1's associate ("UC-2"); defendants CRUZ and ALVAREZ told UC-1 and UC-2 that: (a) defendants CRUZ and ALVAREZ distributed cocaine on behalf

of two Mexican cartels; (b) they received cocaine in 15- to 20-kilogram shipments; and (c) they divided the cocaine between each other for further distribution.  Defendants CRUZ and ALVAREZ further offered to pay $30,000 per kilogram for cocaine if UC-1 could supply defendants CRUZ and ALVAREZ with cocaine for sale.

30.  On March 31, 2016, defendant ALVAREZ delivered $269,999 in drug proceeds in Boston to UC-2.

31.  On or about April 2, 2016, in a WhatsApp message, defendant BUSTAMANTE instructed UC-1 to wire transfer the funds to Company A Account 1, which was controlled by defendant ZENG.

32.  On April 7, 2016, defendant ZENG accepted the wire transfer of $259,199.40 to Company A Account 1.

March 2016 Dallas Money Contract

33.  On March 29, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE offered UC-1 a money-laundering contract to collect drug proceeds in Dallas, Texas.

34.  On April 4, 2016, after $200,000 in drug proceeds were delivered by defendant BUSTAMANTE's Dallas-based courier to an undercover law enforcement agent posing as UC-1's associate, defendant BUSTAMANTE provided UC-1 the telephone number of defendant E. GARCIA as the Los Angeles-based courier who would pick up the drug proceeds.

35.  On April 4, 2016, defendant E. GARCIA, at the behest of and on behalf of defendant BUSTAMANTE, accepted $196,000 in drug proceeds in Los Angeles from an undercover law enforcement agent posing as UC-1's associate.

36.   On April 4, 2016, defendant MENDEZ acted as a lookout for defendant E. GARCIA while defendant E. GARCIA picked up drug proceeds on behalf of defendant BUSTAMANTE.

April 2016 Oklahoma City Money Contract

37.   On or about April 12, 2016, using coded language in text messages, defendant BUSTAMANTE offered UC-1 a money contract to collect drug proceeds in Oklahoma City and provided UC-1 the telephone number of a money courier who would be delivering the drug proceeds.

38.   On April 14, 2016, an unindicted co-conspirator, at the behest of and on behalf of defendant BUSTAMANTE, delivered $76,180 in drug proceeds in Oklahoma City to an undercover law enforcement agent posing as UC-1's associate.

39.   On April 14, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE confirmed with UC-1 that the drug proceeds in Oklahoma City had been delivered to UC-1's associate.

40.   On April 18, 2016, defendant E. GARCIA, at the behest of and on behalf of defendant BUSTAMANTE, accepted $74,620 in drug proceeds in Los Angeles from an undercover law enforcement agent posing as UC-1's associate.

May-June 2016 Dallas Money Contracts

41.   On or about May 26, 2016, using coded language in a telephone conversation, defendant BUSTAMANTE offered UC-1 a money-laundering contract to collect drug proceeds in Dallas, Texas and provided to UC-1 the telephone number of a Dallas-based money courier who would be delivering the drug proceeds.

42.   On June 2, 2016, after $160,000 in drug proceeds were delivered by defendant BUSTAMANTE's Dallas-based courier to an

11

1  undercover law enforcement agent posing as UC-1's associate,
2  defendant BUSTAMANTE sent a WhatsApp message to UC-1 with
3  instructions to wire transfer the money picked up in Dallas to four
4  bank accounts controlled by Co-conspirator 1.

5      43.  On June 6, 2016, law enforcement agents wire transferred a
6  total of $156,000 to accounts controlled by Co-conspirator 1, who
7  subsequently wire transferred a total of $257,000 to the Company A
8  Accounts, controlled by defendant ZENG.

9      44.  On June 9, 2016, using coded language in a telephone
10  conversation, defendant BUSTAMANTE offered UC-1 a money-laundering
11  contract to collect approximately $250,000 in drug proceeds in
12  Dallas, Texas and provided to UC-1 the telephone number of a Dallas-
13  based money courier who would be delivering the drug proceeds.

14     45.  On June 13, 2016, after $250,020 in drug proceeds were
15  delivered by defendant BUSTAMANTE's courier to an undercover law
16  enforcement agent posing as UC-1's associate, defendant BUSTAMANTE
17  sent a WhatsApp message to UC-1 with instructions to wire transfer
18  the money picked up in Dallas to four bank accounts controlled by Co-
19  conspirator 1.

20     46.  On June 17, 2016, after law enforcement agents wire
21  transferred a total of $244,900 to accounts controlled by Co-
22  conspirator 1, Co-conspirator 1 wire transferred $188,349 to one of
23  the Company A Accounts, which was controlled by defendant ZENG.

24     47.  On June 30, 2016, using coded language in a telephone
25  conversation, defendant BUSTAMANTE offered UC-1 a money-laundering
26  contract to collect approximately $150,000 in drug proceeds in
27  Dallas, Texas and provided to UC-1 the telephone number of a Dallas-
28  based money courier who would be delivering the drug proceeds.

48.  On July 5, 2016, after $98,200 in drug proceeds were delivered by defendant BUSTAMANTE's Dallas-based courier to an undercover law enforcement agent posing as UC-1's associate, defendant BUSTAMANTE sent a text message to UC-1 with instructions to wire transfer the money to four bank accounts controlled by Co-conspirator 1.

49.  On July 12 and 14, 2016, after law enforcement agents wire transferred a total of $96,200 to accounts controlled by Co-conspirator 1, Co-conspirator 1 wire transferred a total of $75,000 to a bank account in the name of Company B.

**May-July 2016 Communications Involving Defendants BUSTAMANTE, ZAVALA and ZENG**

50.  On May 26, 2016, defendant BUSTAMANTE forwarded UC-1 a WhatsApp message containing an inquiry from a Hong Kong-based bank concerning Company A Account 1, which was controlled by defendant ZENG, with questions regarding funds previously transferred to that account from an undercover law enforcement account.

51.  On June 3, 2016, defendant BUSTAMANTE provided UC-1 with a Chinese telephone number used by defendant ZENG so that UC-1 could contact defendant ZENG directly regarding the bank inquiry.

52.  On or about June 3, 2016, in WhatsApp messages, defendant ZENG informed UC-1 that she needed answers to the Hong Kong-based bank's inquiries to prevent closure of Company A Account 1.

53.  On June 28, 2016, using coded language in WhatsApp messages, defendant ZENG requested UC-1's assistance in transferring money between the United States and China, as well as within the United States, for defendant ZAVALA, and provided UC-1 with a telephone number for defendant ZAVALA.

54.   On June 28, 2016, using coded language in a telephone conversation, defendant ZAVALA informed UC-1 that defendant ZAVALA was defendant ZENG's associate and that the money-laundering contracts that UC-1 had previously accepted from defendant BUSTAMANTE had, in fact, originated with defendant ZAVALA.

55.   On June 28, 2016, using coded language in a telephone conversation, defendant ZAVALA offered UC-1 future money contracts in the United States and explained that funds for the money contracts were wire transferred to shell accounts set up by Co-conspirator 1 and then transferred to Hong Kong bank accounts held by defendant ZENG.

56.   On July 6, 2016, after defendant ZAVALA shared Co-conspirator 1's contact information with UC-1, Co-conspirator 1 informed UC-1 that he could set up shell corporations for UC-1 and would charge a commission for his services.

57.   On July 7, 2016, using coded language in a telephone conversation, defendant ZAVALA told UC-1 that Defendant ZAVALA had an associate in Mexico who could obtain chemicals used to manufacture drugs and that he had an associate who could supply cocaine that was 93% pure for approximately $23,000 per kilogram.

58.   On July 16, 2016, in a meeting in Thailand using coded language, defendant ZENG informed UC-1 and UC-2 that defendant ZENG wanted to avoid problems with bank transactions by limiting the amounts of transactions and confirmed with UC-1 and UC-2 that the money she was accepting on behalf of defendants ZAVALA and BUSTAMANTE in the bank accounts she controlled represented drug proceeds.

59.   On July 26, 2016, in a meeting in Los Angeles, California using coded language, defendant ZAVALA discussed with UC-1, UC-2, and

14

a confidential informant working for the DEA posing as UC-1's transportation coordinator ("Coordinator A"), a potential money-laundering contract to transfer approximately $1 million from Los Angeles to Bogota, Colombia.

60.   On July 26, 2016, in a meeting in Los Angeles, California using coded language, defendant ZAVALA discussed with Coordinator A potential future transactions to transport and distribute cocaine and other drugs from Los Angeles to other cities in the United States.

August 2016 El Segundo Money Contract

61.   On August 24, 2016, using coded language in WhatsApp messages, defendant ZAVALA offered UC-1 a money-laundering contract to collect drug proceeds in Los Angeles, California and provided to UC-1 the California driver's license of defendant D. GARCIA, who defendant ZAVALA identified as the Los Angeles-based money courier who would be delivering the drug proceeds.

62.   On August 24, 2016, defendant D. GARCIA called the telephone number of an undercover law enforcement agent posing as UC-1's associate and, using coded language, attempted to arrange the delivery of the drug proceeds.

63.   On August 24, 2016, in El Segundo, California, defendant D. GARCIA delivered $99,480 in drug proceeds to an undercover law enforcement agent posing as UC-1's associate.

64.   On August 25, 2016, in a WhatsApp message, defendant ZAVALA instructed UC-1 to wire transfer the funds to several bank accounts controlled by Co-conspirator 1, which funds totaling $96,480 ($99,480 less a $3,000 commission) were subsequently transferred to accounts controlled by Co-conspirator 1 as instructed.

65.  On August 30, 2016, Co-conspirator 1 caused $48,556.09 to be sent via wire transfer to a Company B bank account.

66.  On September 2, 2016, Co-conspirator 1 caused $49,901.97 to be sent via wire transfer to one of the Company A Accounts, which was controlled by defendant ZENG.

December 2016 Houston Money Contract

67.  On December 1, 2016, using coded language in a WhatsApp message, defendant ZAVALA offered UC-2 a money-laundering contract to collect approximately $45,000 in drug proceeds in Houston, Texas and provided to UC-2 the telephone number of a Houston-based money courier who would be delivering the drug proceeds.

68.  On December 2, 2016, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $45,000 in drug proceeds in Houston to an undercover law enforcement agent posing as UC-2's associate.

69.  On December 2, 2016, in a WhatsApp message, defendant ZAVALA instructed UC-2 to wire transfer the funds to a Company B bank account, which funds ($45,000 less a 3% commission) were subsequently transferred to the Company B bank account as directed by defendant ZAVALA.

April-May 2017 Atlanta Money Contract

70.  On April 26, 2017, in a WhatsApp message, defendant ZAVALA provided to UC-2 the telephone number of a money courier who would be delivering drug proceeds for a previously-discussed money contract defendant ZAVALA had offered to UC-2 to collect approximately $100,000 in drug proceeds in Atlanta, Georgia.

71.  On April 27, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $100,240 in

16

drug proceeds in Atlanta to an undercover law enforcement agent posing as UC-2's associate.

72.   On May 2, 2017, using coded language in a WhatsApp message, defendant ZAVALA provided UC-2 the telephone number of defendant ARREOLA, who defendant ZAVALA identified as the Los Angeles-based courier who would be accepting the delivery of the drug proceeds.

73.   On May 2, 2017, defendant ARREOLA met with an undercover law enforcement agent posing as UC-2's associate in Los Angeles and accepted $99,740 in drug proceeds wrapped in cellophane inside an envelope.

August 2017 Dallas Money Contract

74.   On August 29, 2017, using coded language in WhatsApp messages, defendant ZAVALA offered UC-2 a money-laundering contract to collect approximately $85,000 in drug proceeds in Dallas, Texas and provided to UC-2 the telephone number of a Dallas-based money courier who would be delivering the drug proceeds.

75.   On August 30, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $50,000 in drug proceeds in Dallas to an undercover law enforcement agent posing as UC-2's associate.

76.   On September 5, 2017, using coded language in a WhatsApp message, defendant ZAVALA instructed UC-2 to wire transfer the funds to a Company B bank account, which funds ($50,000 less a 3% commission) were subsequently transferred to the Company B bank account as directed by defendant ZAVALA.

September 2017 First Atlanta Money Contract

77.   On September 7, 2017, using coded language in a WhatsApp message, defendant ZAVALA offered a money-laundering contract to

17

collect drug proceeds in Atlanta, Georgia to an undercover law enforcement officer purporting to be an associate of UC-2 ("UC-3"), and accepted from UC-3 the contact information of an undercover law enforcement agent in Atlanta posing as UC-3's associate as the individual who would be accepting the drug proceeds.

78.   On September 13, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $150,060 in drug proceeds in Atlanta to an undercover law enforcement agent posing as UC-3's associate.

79.   On September 13, 2017, using coded language in a WhatsApp message, defendant ZAVALA provided UC-3 with the telephone number of defendant MENDEZ, who defendant ZAVALA identified as the Los Angeles-based courier who would be accepting the delivery of the drug proceeds.

80.   On September 15, 2017, using coded language in telephone conversations, defendant MENDEZ arranged for his associate to accept the drug proceeds from an undercover law enforcement agent posing as UC-3's associate in Los Angeles.

81.   On September 15, 2017, defendant LOPEZ, at the behest of and on behalf of defendants ZAVALA and MENDEZ, accepted $148,560 ($150,060 less a $1,500 commission) in drug proceeds inside a paper bag in Los Angeles from an undercover law enforcement agent posing as UC-3's associate.

September 2017 Chicago Money Contract

82.   On September 11, 2017, using coded language in a WhatsApp message, defendant ZAVALA offered UC-3 a money-laundering contract to collect approximately $80,000 in drug proceeds in Chicago, Illinois, and accepted from UC-3 the contact information of an undercover law

enforcement agent in Chicago posing as UC-3's associate as the individual who would be accepting the drug proceeds.

83.   On September 12, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $80,180 in drug proceeds inside a blue gift bag in Chicago to an undercover law enforcement agent posing as UC-3's associate.

84.   On September 13, 2017, using coded language in WhatsApp messages, defendant ZAVALA provided UC-3 with the telephone number of defendant MENDEZ, who defendant ZAVALA identified as the Los Angeles-based courier who would be accepting the delivery of the drug proceeds.

85.   On September 13, 2017, using coded language in telephone conversations, defendant MENDEZ arranged for his associate to accept the drug proceeds from an undercover law enforcement agent posing as UC-3's associate in Los Angeles.

86.   On September 13, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendants ZAVALA and MENDEZ, accepted $79,379 ($80,180 less a 1% commission) in drug proceeds in Los Angeles from an undercover law enforcement agent posing as UC-3's associate.

September 2017 Second Atlanta Money Contract

87.   On September 20, 2017, using coded language in a WhatsApp message, defendant ZAVALA offered UC-3 a money-laundering contract to collect drug proceeds in Atlanta, Georgia, and accepted from UC-3 the contact information of an undercover law enforcement agent in Atlanta

posing as UC-3's associate as the individual who would be accepting the drug proceeds.

88.   On September 21, 2017, an unindicted co-conspirator, at the behest of and on behalf of defendant ZAVALA, delivered $99,990 in drug proceeds in Atlanta to an undercover law enforcement agent posing as UC-3's associate.

89.   On September 25, 2017, using coded language in WhatsApp messages, defendant ZAVALA confirmed with UC-3 that the drug proceeds delivered in Atlanta should be given to defendant MENDEZ in Los Angeles.

90.   On September 25, 2017, using coded language in a telephone conversation, defendant MENDEZ arranged for defendant ARREOLA to accept the drug proceeds from an undercover law enforcement agent posing as UC-3's associate in Los Angeles.

91.   On September 25, 2017, defendant ARREOLA, at the behest of and on behalf of defendants ZAVALA and MENDEZ, accepted $98,990 ($99,990 less a $1,000 commission) in drug proceeds in Los Angeles from an undercover law enforcement agent posing as UC-3's associate.

COUNT TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, and MENDEZ]

Between on or about October 14, 2015 and on or about October 20, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," and MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $70,000 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT THREE

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, ZENG, and MENDEZ]

Between on or about October 27, 2015 and on or about November 30, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," HONG ZENG, aka "Alondra China," and MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," each aiding and abetting the others, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $398,970 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT FOUR

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, ZENG, and ALVAREZ]

Between on or about March 13, 2016 and on or about March 18, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," HONG ZENG, aka "Alondra China," and FNU LNU, aka "Alvarez," each aiding and abetting the others, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $330,020 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT FIVE

[18 U.S.C. § 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, and MENDEZ]

Between on or about March 21, 2016 and on or about March 28, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," and MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $99,925 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT SIX

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, ZENG, CRUZ, and ALVAREZ]

Between on or about March 21, 2016 and on or about April 7, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," HONG ZENG, aka "Alondra China," RAFAEL OMAR CRUZ-VALEDON, aka "Parce," and FNU LNU, aka "Alvarez," each aiding and abetting the others, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $269,999 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT SEVEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, MENDEZ, and E. GARCIA]

Between on or about April 12, 2016 and on or about April 21, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," and ERICK GIOVANNY GARCIA, aka "Juanito," each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $200,000 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT EIGHT

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, BUSTAMANTE, and E. GARCIA]

Between on or about April 12, 2016 and on or about April 21, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, ABEL BUSTAMANTE-DURAN, aka "Prieto," and ERICK GIOVANNY GARCIA, aka "Juanito," each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $76,180 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT NINE

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA and D. GARCIA]

Between on or about August 24, 2016 and on or about September 1, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ and DIANA QUIROZ GARCIA, each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $99,480 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT TEN

[18 U.S.C. § 1956(a)(1)(B)(i)]

[DEFENDANT ZAVALA]

Between on or about December 1, 2016 and on or about December 7, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant JORGE HUGO ZAVALA-LOPEZ knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $45,000 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT ELEVEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA and ARREOLA]

Between on or about April 14, 2017 and on or about May 2, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ and JUAN CARLOS ARREOLA, each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $100,240 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT TWELVE

[18 U.S.C. § 1956(a)(1)(B)(i)]

[DEFENDANT ZAVALA]

Between on or about August 29, 2017 and on or about September 6, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant JORGE HUGO ZAVALA-LOPEZ knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $50,000 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT THIRTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, MENDEZ, and LOPEZ]

Between on or about September 6, 2017 and on or about September 15, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," and RAMON ANTONIO LOPEZ-LLAMAS, each aiding and abetting the others, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $150,060 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT FOURTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA and MENDEZ]

Between on or about September 11, 2017 and on or about September 13, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ and MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," each aiding and abetting the other, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $80,180 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

33

COUNT FIFTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANTS ZAVALA, MENDEZ, and ARREOLA]

Between on or about September 20, 2017 and on or about September 25, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants JORGE HUGO ZAVALA-LOPEZ, MARCO ANTONIO MENDEZ-GUZMAN, aka "Acelerin," and JUAN CARLOS ARREOLA, each aiding and abetting the others, knowingly transported, transmitted, and transferred monetary instruments and funds affecting interstate and foreign commerce, namely, approximately $99,990 in United States currency, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(1)]

[ALL DEFENDANTS]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given to defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction under any of Counts One through Fifteen of this Indictment.

2.   Defendants shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real or personal, involved in or traceable to any transaction set forth in any of Counts One through Fifteen of this Indictment including, but not limited to all funds in the Hang Seng Bank Hong Kong account with an account number ending in 6883; and

b.   A sum of money equal to the total value of the property described in subparagraph a. above.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be

35

1  divided without difficulty.  Substitution of assets shall not be

2  ordered, however, where the defendant acted merely as an intermediary

3  who handled but did not retain the property in the course of the

4  money laundering offense unless the defendant, in committing the

5  offense or offenses giving rise to the forfeiture, conducted three or

6  more separate transactions involving a total of $100,000.00 or more

7  in any twelve-month period.

8

9                              A TRUE BILL

10

11                              _____/S/_____
                                Foreperson

12

13  NICOLA T. HANNA
    United States Attorney

14

15  *Brandon Fox*

16  BRANDON D. FOX
    Assistant United States Attorney

17  Chief, Criminal Division

18  CAROL A. CHEN
    Assistant United States Attorney

19  Chief, International Narcotics,
        Money Laundering, &

20      Racketeering Section

21  PUNEET V. KAKKAR
    Assistant United States Attorney

22  Deputy Chief, International
        Narcotics, Money Laundering,

23      & Racketeering Section

24  BENEDETTO L. BALDING
    Assistant United States Attorney

25  International Narcotics, Money
        Laundering, & Racketeering

26      Section

27

28

                              36